UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK GRAINGER, JR.,                    )
                            Plaintiff,      )
                                            )          No. 1:19-cv-501
-v-                                         )
                                            )          Honorable Paul L. Maloney
COUNTY OF OTTAWA, *et al.*,                  )
                            Defendants.     )
_____)

## OPINION AND ORDER

Michigan's General Property Tax Act (GPTA) authorizes the foreclosure and subsequent sale of tax-delinquent real property. Plaintiff Frederick Grainger owed approximately $21,500.00 in property taxes. His property was valued at more than $600,000.00. The property was forfeited to the Ottawa County Treasurer and foreclosed upon, after which the property was sold at a public auction for almost $400,000.00. Ottawa County has since refused to give Plaintiff any of the proceeds from the sale. Plaintiff sued Ottawa County, its prior and current treasurer, and has asked the Court to certify a class of similarly-situated former property owners. Plaintiff seeks to include all or almost all of the counties and the county treasurers in the Western District of Michigan.

Among the motions currently pending in this lawsuit are four motions to dismiss (ECF Nos. 18, 20, 68 and 75) and Plaintiff's motion for class certification (ECF No. 101). The motions have been fully briefed and the Court has reviewed the submissions. The Court will deny the motion for class certification and will grant the motions to dismiss in part and deny the motions in part.

# I.

The controlling pleading is Plaintiff's Second Amended Complaint.  (ECF No. 14.) Plaintiff owned property in Spring Lake, Michigan, which is located in Ottawa County.  For undisclosed reasons, Plaintiff did not pay property taxes and owed approximately $21,500.00 in delinquent taxes.  (Compl. ¶ 18 PageID.284.)  In April 2013, Defendant Bradley Slagh, the Ottawa County Treasurer, seized the property.  (*Id.* ¶ 19 PageID.284.)  Slagh then signed a Notice of Judgement of Foreclosure on April 10, 2013.  (ECF No. 1-2 PageID.13.)  The Notice indicates that Ottawa County initiated the tax foreclosure proceeding in 2012, and that the Ottawa County Circuit Court entered a judgment of foreclosure, which became final on April 1, 2013.  (*Id.*)  The Notice also states that the judgment issued by the state circuit court vested title in the Ottawa County Treasurer.  (*Id.*)  As the County Treasurer, Slagh sold the property at auction for $392,0000.00 and conveyed the property.  (Comp. ¶ 21 PageID.284.)  At the time, the property had a State Equalized Value (SEV) of $304,900.00 and an approximate fair market value of $609,800.00.  (*Id.* ¶ 20 PageID.284.)  Both Slagh and the new Ottawa County Treasurer, Defendant Amanda Price, have refused to tender any proceeds of the sale to Plaintiff.  (*Id.* ¶ 26 PageID.285.)  Plaintiff makes clear that his lawsuit and his claims arise from "what happens *after* the taxation process is completed and excess or surplus equity remains after each county is paid in full for all delinquent taxes, interest, penalties, and fees."  (*Id.* ¶ 13 PageID.283) (emphasis in original).

Plaintiff contends the tax foreclosure, the sale of his property, and the retention of the surplus is representative of situations in counties across the Western District of Michigan. Plaintiff seeks to certify a class.  Plaintiff sued all (or almost all) counties in the Western

District of Michigan (County Defendants) and the county treasurer for each county (Individual Defendants).  In some cases, a former county treasurer is a named defendant. The Individual Defendants are sued in their individual and their official capacities.  Plaintiff asserts eight counts or claims.  Count I raises a takings claim under the Fifth and Fourteenth Amendments against all defendants.  Count II raises a takings claims "arising directly" under the Fifth Amendment against all defendants.  Count III raises a state-law claim for inverse condemnation against the County Defendants and the Individual Defendants in their official capacities.  Count IV raises an eminent domain claim under Article X, Section 2 of the Michigan Constitution against the County Defendants and the Individual Defendants in their official capacities.  Count V raises an Eighth Amendment claim for excessive fines against all defendants.  Count VI raises a Fourteenth Amendment procedural due process claim against all defendants.  Count VII raises a Fourteenth Amendment substantive due process claim against all defendants.  Finally, Count VIII raises a state-law claim for unjust enrichment against the County Defendants.

Multiple motions are pending and this Opinion addresses five of those motions. Plaintiff filed a motion for class certification.  (ECF No. 101.)  Defendants have filed four motions to dismiss.[1]  The first motion is filed on behalf of thirty-nine counties and their treasurers (First Defendants).[2]  (ECF No. 18.)  The second motion is filed on behalf of

---

[1]      Plaintiff voluntarily dismissed Presque Isle County and Bridget Lalonde on January 16, 2020. (ECF No. 51.)

[2]      The title for the motion identifies the thirty-eight counties by name and then references, within parentheses, the "Individuals" associated with the counties, which the Court interprets as the county treasurers.  (PageID.314 and 317.)  The motion was filed on behalf of the following counties and their treasurers: Alger, Allegan, Antrim, Barry, Benzie, Berrien, Calhoun, Cass, Chippewa, Delta, Dickinson, Eaton, Emmett, Gogebic, Grand Traverse, Hillsdale, Houghton, Ingraham, Ionia,

Ottawa County, Amanda Price and Bradley Slagh (Ottawa Defendants).  (ECF No. 20.)  The

third motion is filed on behalf of Van Buren County, Karen Makay, and Trisha Nesbitt (Van

Buren Defendants).  (ECF No. 68.)  The fourth motion is filed on behalf of Baraga County,

Anne  Koski,  Charlevoix  County,  Marilyn  Cousineau,  Ontonagon  County,  and  Jeanne

Pollard (Baraga Defendants).  (ECF No. 75.).  Defendants raise jurisdictional concerns under

Rule 12(b)(1) and challenges to the merits of certain claims under Rule 12(b)(6).

## II.

Since the motions to dismiss were filed, several federal and state courts have issued

opinions relevant to the claims and defenses raised in this lawsuit.  First, on July 17, 2020,

the Michigan Supreme Court issued its opinion in *Rafaeli, LLC v. Oakland County*, 952

N.W.2d 434 (Mich. 2020).  The facts in the *Rafaeli* case are substantially the same as the

facts here.  Important to the decision, the Court concluded that a property owner does not

lose all rights to the property during the tax foreclosure proceedings.  The Court explained

that "forfeiture" under the GPTA permits the county and county treasurer to seek a judgment

of foreclosure.  *Id.* at 446.   Forfeiture under the GPTA "does not affect title, nor does it

give the county treasurer . . . any rights, titles, or interests to the forfeited property.  Therefore,

we reject the premise that plaintiff's 'forfeited' all rights, titles, and interests they had in their

properties by failing to pay their real-property taxes."  *Id.* at 446-47.  The Court held that

Michigan's "common law recognizes a former property owner's property right to collect the

---

Iron,  Kalamazoo,  Kalkaska,  Kent,  Lake,  Leelanau,  Mackinac,  Manistee,  Marquette,  Mason,
Menominee, Missaukee, Montcalm, Muskegon, Newago, Oceana, Osceola, Schoolcraft, St. Joseph,
and Wexford.

surplus proceeds that are realized from the tax-foreclosure sale of the property." *Id.* at 459. The Court also found that the Michigan's 1963 Constitution "protects a former owner's property right to collect the surplus proceeds following a tax-foreclosure sale under Article 10, § 2." *Id.* at 460. Because the common-law interest was protected by Michigan's Takings Clause, the GPTA could not abrogate the common law interest. *Id.* Finally, the Court held that Oakland County's retention of the proceeds of the sale that exceeded the amount of property taxes owed and other charges and fees constituted an unconstitutional taking.

> Once defendants foreclosed on plaintiffs' properties, obtained title to those properties, and sold them to satisfy plaintiffs' unpaid taxes, interest, penalties, and fees related to the foreclosures, any surplus resulting from those sales belonged to plaintiffs. That is, after the sale proceeds are distributed in accordance with the GPTA's order of priority, any surplus that remains is the property of plaintiffs, and defendants were required to return that property to plaintiffs. Defendants' retention of those surplus proceeds under GPTA amounts to a taking of a vested property right requiring just compensation. To the extent the GPTA permits defendants to retain these surplus proceeds and transfer them into the county general fund, the GPTA is unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid property taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties.

*Id.* at 461. This Court must follow the holding in *Rafaeli.* When a federal court exercises subject-matter jurisdiction over a complaint on the basis of a federal question, supplemental state law claims are resolved by applying the law of the forum state. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1996). When a federal court applies state law, the court "must follow the decisions of the state's highest court when that court has addressed the relevant issue." *Kepley v. Lanz*, 715 F.3d 969, 972 (6th Cir. 2013).

Second, on November 4, 2020, the Sixth Circuit Court of Appeals issued its opinion in *Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020). *Freed* involved a foreclosure sale in Michigan for delinquent property taxes where the plaintiff raised a Fifth Amendment takings claim to the surplus proceeds. The circuit court addressed a jurisdiction question and did not address the merits of Freed's claim. The court held that the Tax Injunction Act "did not preclude the exercise of federal jurisdiction in this case." *Id.* at 734. The court reasoned that Freed "was not attempting to enjoin Michigan's assessment, levy, or collection of a state tax." *Id.* Rather, Freed "challenge[d] Michigan's post-collection failure to reimburse him for the excess proceeds of from the sale of his property and the State's refusal to compensate him for the excess after-tax equity of his property." *Id.* The circuit court also held that "the principle of comity between the federal courts and state governments does not bar this suit in federal court because Freed does not challenge the validity of Michigan's tax system." *Id.* at 737.

Third, two federal district judges in Michigan have issued opinions addressing many of the same issues involved in this lawsuit.[3] Chief Judge Robert Jonker here in the Western District of Michigan issued an opinion resolving motions to dismiss and a motion for summary judgment addressing factually similar claims arising from a tax-foreclosure in Isabella County. *Pung v. Kopke*, No. 1:18-cv-1334 (W.D. Mich. Sept. 29, 2020). Judge Thomas Ludington of the Eastern District of Michigan has issued several opinions in nearly

---

[3]     Although the parties to this lawsuit are different, the attorneys representing the parties in this lawsuit are involved in other cases in the Eastern and Western Districts of Michigan. While the names and facts might change, the legal issues raised and the briefs themselves overlap substantially.

identical lawsuits filed in the Eastern District of Michigan. *Fox v. County of Saginaw*, No. 1:19-cv-11887 (E.D. Mich.) and *Arkona, LLC v. County of Cheboygan*, No. 1:19-cv-12372 (E.D. Mich.). The facts in *Fox* and *Arkona* are substantially similar to the facts in this case. Judge Ludington recently issued orders resolving motions to dismiss. *Fox*, No. 1:19cv11887, 2021 WL 120885 (E.D. Mich. Jan. 13, 2021); *Arkona*, No. 1:19cv12372, 2021 WL 148006 (E.D. Mich. Jan. 15, 2021).

## III.

The Court first resolves the motion to dismiss. All four motions were filed months before Plaintiff filed his motion for class certification.

### A. Standard of Review

Under the notice pleading requirements, a complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *see Thompson v. Bank of America, N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When challenged by a motion filed under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction. *EEOC v. Hosanna-Tabor Evangelical Lutheran Church and Sch.*, 597 F.3d 769, 776 (6th Cir. 2010) (citing *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007)). A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may take the form of a facial challenge, which tests the sufficiency of the pleading, or a factual challenge, which contests the factual predicate for

jurisdiction.  *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (quoting *Mortensen v. First Fed. Savings and Loan Ass'n*, 549 F.2d 884, 890-91 (3d Cir. 1977)); *see also DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  In a facial attack, the court accepts as true all the allegations in the complaint, similar to the standard for a Rule 12(b)(6) motion.  *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325.  In a factual attack, the allegations in the complaint are not afforded a presumption of truthfulness and the district court weighs competing evidence to determine whether subject matter jurisdiction exists.  *Id.*

A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint.  *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).  To survive a motion to dismiss, a plaintiff must allege facts sufficient to state a claim for relief that is "plausible on its face" and, when accepted as true, are sufficient to "raise a right to relief above the speculative level."  *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017) (citation omitted).  "The complaint must 'contain either direct or inferential allegations respecting all material elements necessary for recovery under a viable legal theory.'"  *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015) (citation omitted).  "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2007) (citations omitted).  When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions.  *Ctr. for Bio-Ethical Reform,* 648 F.3d at 369.

### B.  Article III Concerns and Defenses Not Related to the Merits

### 1.  Jurisdiction

Three sets of defendants raise jurisdictional concerns under Rule 12(b)(1). [4] Defendants argue that the Tax Injunction Act, 28 U.S.C. § 1341, prevents this Court from exercising subject-matter jurisdiction over Plaintiff's claims.  Defendants also argue that principles of comity should compel this Court to take a hands-off approach with respect to state-tax collection.

The Sixth Circuit rejected these same jurisdictional challenges in *Freed.*  This Court is bound by the holding in *Freed.*  Following *Freed,* Judge Ludington rejected the same jurisdictional challenges raised by the defendants in *Fox* and in *Arkona.*[5]  *Fox,* 2021 WL 120855, at *3; *Arkona,* 2021 WL 148006, at *3.  So did Judge Jonker in *Pung.  Pung,* No. 1:18-cv-1334, slip op. at 4-5.  Here, Plaintiff's claims assert different causes of action to recover the surplus from the sale of his property.  The claims are not barred by the Tax Injunction Act because the claims do not interfere with the collection of a state tax.  The

---

[4]      First Defendants (ECF No. 18-1 at 2-5 PageID.330-33), Van Buren Defendants (ECF No. 69 at 8 PageID.1136) and Baraga Defendants (ECF No. 76 at 17-18 PageID.1246-47).

[5]      In *Fox,* Judge Ludington issued an order on October 10, 2020, certifying a class and appointing class counsel.  *Fox,* No. 1:19-cv-11887, 2020 WL 6118487 (E.D. Mich. Oct. 16, 2020). In that opinion, he wrote that "*Freed* conclusively answered the jurisdictional questions raised by Defendants. According to the Sixth Circuit, neither the Tax Injunction Act nor principles of comity preclude subject matter jurisdiction over a suit to recover surplus proceeds retained pursuant to the GPTA."  *Id.* at *4.  In the 2021 orders resolving the motions to dismiss, Judge Ludington quotes this passage from his 2020 order.

prayer for relief in the complaint affirms that Plaintiff does not seek to enjoin any part of the foreclosure process itself.  (Compl. PageID.301-03.)  To the extent any of the prayers for relief could be read broadly as a request to interfere with the foreclosure process, this Court could not grant Plaintiff that relief.  The same reasoning applies to Defendants' reliance on the principles of comity.  Plaintiff does not challenge the validity of Michigan's tax system.

## 2. Standing

Van Buren Defendants argue that Plaintiff lacks standing to sue anyone other than Ottawa County and its officials.  (ECF No. 69 at 6-8 PageID.1134-36.)  Plaintiff contends that this argument must be considered in the context of his request for class certification.  In his order granting in part and denying in part the defendants' motions to dismiss, Judge Ludington provided a concise explanation of the juridical link doctrine in the context of a class action lawsuit like this one and explained how the doctrine affects standing.  *Fox*, 2021 WL 120855, at *3-*6.

As part of the motions to dismiss, the Court declines to dismiss the Van Buren Defendants (or any other defendant not associated with Ottawa County) on the basis of standing.  Plaintiff does not plead a claim against any defendant other than those associated with Ottawa County.  However, Plaintiff has filed a motion for class certification.  (ECF No. 101.)  The Court's resolution of the motion for class certification will affect the standing issue.  Should the Court grant the motion, Plaintiff would represent a class of individuals that would include individuals who lost their property to tax foreclosure in Van Buren County.  The Court will then have to consider whether to apply the juridical link doctrine.  Should the

Court decline to certify a class, the Court would then dismiss any defendant not associated with Ottawa County because Plaintiff has not asserted any claim against those defendants.

### 3.  Statute of Limitations

In their motions to dismiss, three sets of defendants argue that Plaintiff's federal claims brought under 28 U.S.C. § 1983 are barred by the statute of limitations.[6]  Defendants contend that claims brought under § 1983 borrow the state's personal injury statute of limitations, which in Michigan is three years.  Defendants assert Plaintiff's claims accrued in 2013 and this lawsuit was filed in 2019.  Plaintiff argues that the statute of limitations is six years, not three years.  Alternatively, Plaintiff argues that the statute of limitations was tolled because of another class action lawsuit.

First, the Court concludes Plaintiff's claims accrued on September 4, 2013, when Defendant Slagh sold the property at auction and transferred the property through a quit claim deed.  Plaintiff's claims arise from Ottawa County's retention of the surplus from that sale.  *See Rafaeli*, 952 N.W.2d at 462 ("Indeed, a former property owner only has a right to collect the surplus proceeds from the tax-foreclosure sale; that is, a former property owner has a compensable takings claim if and only if the tax-foreclosure sale produces a surplus.")  Plaintiff pleads that the sale occurred on September 6, 2017.[7]  (Compl. ¶ 21 PageID.284.)  In his responses to the motions to dismiss, Plaintiff does not rely on the date pled in the

---

[6]      First Defendants (ECF No. 18-1 at 8 PageID.336), Ottawa Defendants (ECF No. 21 at 6-8 PageID.386-88) and Van Buren Defendants (ECF No. 69 at 11 PageID.1139).

[7]      In the original compliant, Plaintiff did not plead a date of the sale but did include an explicit reference to the attached quit claim deed.  (ECF No. 1 ¶ 10 PageID.3.)  The same is true of the first amended complaint.  (ECF No. 3 ¶ 10 PageID.48.)  The second amended complaint contains the wrong date, by four years, and does not include any exhibits or attachments.

complaint.  Instead, Plaintiff appears to correct his pleading, asserting that his claim accrued no earlier than September 6, 2013, "when Defendants sold the property at auction."  (ECF No. 39 at 11 PageID.611; ECF No. 46 at 12 PageID.837.)  Plaintiff has put the quit claim deed in the Court's record.  (ECF No. 1-3 PageID.14; ECF No. 3-3 PageID.60.)

Plaintiff argues that the Court should not resolve the statute of limitations question as part of a motion to dismiss because it is an affirmative defense.  In their motion, First Defendants (ECF No. 18-1 at 8 PageID.8) cite to the quit claim deed filed by Plaintiffs as part of the original complaint.  And, Ottawa County Defendant attach the quit claim deed to their motion to dismiss.  (ECF No. 21-11 PageID.447.)  Because the quit claim deed is not part of the controlling complaint, ordinarily this Court could not consider the document without converting the motions to dismiss into motions for summary judgment.  *See* Fed. R. Civ. P. 12(d).  However, Plaintiff admits the correct date in his responses to the motions allowing the Court can resolve the matter under Rule 12.

Although the Court interprets the statements in Plaintiff's responses to the motions to dismiss a admission or concession that the sale occurred in 2013, in an abundance of caution the Court will take judicial notice of the date of the quit claim deed.  *See* Fed. R. Evid. 201(c)(1).  Courts may take judicial notice *sua sponte*.  *United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964).  Courts may take "notice of items in the public record" when considering a motion to dismiss.  *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records and are otherwise appropriate

for the taking of judicial notice.").  Rule 201 of the Federal Rules of Evidence allows a court to take notice of "adjudicative facts" that are not subject to reasonable dispute when the fact can be readily determined from a source whose accuracy cannot reasonably be questioned. The quit claim deed is a public record filed with the Ottawa County Register of Deeds. (PageID.14.)  The date of the deed is an adjudicative fact not subject to reasonable dispute.

Second, the Court concludes that the three-year statute of limitations applies to Plaintiff's federal claims brought under 28 U.S.C. § 1983.[8]  By enacting § 1983, Congress provided a statutory vehicle or method for remedying violations of federal constitutional and statutory rights.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Congress, however, did not include a statute of limitations for § 1983 actions.  *Wolfe v. Perry*, 412 F.3d 707, 713 (6th Cir. 2005).   The Supreme Court found that § 1983 claims are "best characterized as tort actions for the recovery of damages for personal injuries and federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 claim was brought."  *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)).  And, where the state has statutes of limitations for enumerated intentional torts, the state's residual statute for all other personal injury actions or general personal injury statute of limitations applies.  *Owens v. Okure*, 488 U.S. 235, 236 (1989).  Michigan's Legislature enacted different statutes of limitations for different torts. Mich. Comp. Laws § 600.5805.  The Sixth Circuit has applied Michigan's three-year statute

---

[8]      The Court acknowledges that Plaintiff pleads a Fifth Amendment claim under § 1983 (Count I) and a claim "arising directly" under the Fifth Amendment (Count II).

of limitation to § 1983 claims in Michigan.  *Estate of Majors v. Gerlach*, 821 F. App'x 533, 537 (6th Cir. 2020) (citing *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam)); *see* Mich. Comp. Laws § 600.5805(2) ("Except as otherwise provided in this section, the period of limitations is 3 years after the time of death or injury for all actions to recover damages for the death of a person or for injury to a person or property.").[9]

Plaintiff argues that the Court should apply Michigan's six-year statute of limitation for "all other personal actions," Mich. Comp. Laws § 600.5813, citing *Rowe v. Bank One, Indianapolis, N.A.*, 230 F.3d 1359 (6th Cir. 2000).  The Court declines Plaintiff's invitation. The cases cited in the previous paragraph indicate that the Michigan's three-year statute of limitations applies to Plaintiff's claims brought under § 1983.  The statement in *Rowe*, an unpublished opinion, cannot be reconciled with binding precedent.  Also, the portion of *Rowe* to which Plaintiff points is the fourth and last reason given for dismissal of the claims and, therefore, is likely dicta.  Plaintiff had three years from September 6, 2013, to file his federal claims brought under § 1983.[10]

Plaintiff makes an alternative argument, arguing that his claims were tolled because of a different class action lawsuit in which he would have been a member of the class.  *See American Pipe & Constr. Co. v. Utah*, 414 US. 538, 550-53 (1974).  Although the facts in *American Pipe* are somewhat complicated, the Court succinctly explained the holding.

---

[9]      The version of this statute effective between January 2012 and June 2018 included provision as subsection (10).

[10]      Plaintiff contends his state law claims have a six-year statute of limitations, which Defendants do not dispute, even if Defendants do dispute when the claims accrued.  Plaintiff filed this lawsuit on June 23, 2019.  Using the September 6, 2013, date for accrual, Plaintiff's state laws claims are not barred by the statute of limitations.

When a motion for class action has been denied, "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 552-53.  Nine years later, in *Crown, Cork & Seal Company, Incorporated v. Parker*, 462 U.S. 345 (1983), the Court clarified that the purported members of the class need not file a motion to intervene in order to pursue their tolled claims; they may also file their own lawsuit.  "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification has been denied.  At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id.* at 353-54.  Plaintiff contends *Wayside Church v. Van Buren County*, No. 1:14-cv-1274 (W.D. Mich.) tolled the statute of limitations for his federal takings claim.

Plaintiff has established that the statute of limitations for his § 1983 Fifth Amendment takings claim has been tolled by *Wayside Church*.  The *Wayside Church* class action was filed in 2014 and the request for class certification remains pending.[11]  Wayside Church alleged a Fifth Amendment takings claim arising from the surplus proceeds following the sale

---

[11]     The Court granted a motion to dismiss in November 2015 and did not resolve the motion for class certification that was filed in February 2015.  On appeal, in February 2017, the Sixth Circuit vacated the decision and the case was remanded with instructions to dismiss the lawsuit for lack of jurisdiction.  The Supreme Court denied the petition for certiorari in November 2017.  In March 2018, Wayside Church moved to reopen the action based on a pending appeals to the Michigan and United States Supreme Courts.  The Court reopened the lawsuit in March 2019 and then held it in abeyance because the Michigan Supreme Court (*Rafaeli*) and the United States Supreme Court (*Knick v. Township of Scott*) had agreed to review different cases, both of which included issues relevant to Wayside Church's claims.  Plaintiff filed an amended complaint in March 2020.  The Court has lifted the stay order.  Currently pending in that lawsuit is a motion to dismiss, a motion for leave to file another amended complaint, and the motion for class certification, which was filed on December 24, 2020.  Plaintiff Grainger filed a motion to intervene in January 2021 so that he could oppose Wayside Church's motion for class certification.

of a tax-delinquent property.  Should Wayside Church's motion for class certification be granted, Plaintiff would be a member of the class.  Accordingly, the Court will not dismiss Plaintiff's Fifth Amendment takings claim on the statute of limitations issue.

### 4.  *Res Judicata*

Three sets of defendants argue that Plaintiff's claims are barred by the doctrine of *res judicata*, also called claim preclusion.[12]

Federal courts must give a state-court judgment the same preclusive effect that the state-court judgment would be given in the State where the judgment was issued.  *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 81 (1984).  The doctrine of *res judicata* prevents parties from filing multiple lawsuits over the same causes of action.  *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004).  In Michigan, the doctrine precludes claims already litigated and claims arising from the same transaction that the parties could have raised but did not.  *Id.*  The doctrine prohibits a second, subsequent lawsuit when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second lawsuit was or could have been resolved in the first lawsuit.  *Id.*

Defendants have not demonstrated that *res judicata* bars Plaintiff's claims to the surplus proceeds.  Plaintiff's claim to the surplus could not arise before the sale of the property.  Before the sale, any surplus was mere speculation; the property could have sold at auction for less than what Plaintiff owed in property taxes.  And, the foreclosure litigation and the entry of judgment necessarily occurred prior to the sale, preventing Plaintiff from

---

[12]     First Defendants ECF No. 18-1 at 6-8 PageID.334-36; Ottawa Defendants ECF No. 21 at 8-11 PageID.388-91; Van Buren Defendants ECF No. 69 at 11 PageID.1139.

raising a claim to the surplus during the prior proceedings.  For these reasons, and for the reasons identified by Judge Jonker, *Pung*, No. 1:18-cv-1334, slip op. at 5-6, the Court declines to dismiss Plaintiff's claim under the doctrine of *res judicata*.  The Court is also persuaded by Judge Ludington's discussion of the different cases and opinions cited by the parties here and in the *Fox* case.  *See Fox*, 2021 WL 120855, at *8-*10.

### 5.  Official Capacity Claims

Two sets of defendants argue that the Court should dismiss the official capacity claims brought against the Individual Defendants as duplicative of the claims against the Defendant Counties.[13]  Plaintiff contends he can plead alternative theories.

The Court will dismiss the official capacity claims against the Individual Defendants. The official capacity claims against the Individual Defendants and the claims against Defendant Counties are redundant claims.  The Supreme Court explained that "[t]here is no longer a need to bring official-capacity claims against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief."  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (internal citation signal omitted); *see, e.g., Jackson v. Shelby Cty. Gov't*, No. 07-6356, 2008 WL 4915434, at *2 (6th Cir. Nov. 10, 2008) (unpublished order) ("Second, the district court properly granted summary judgment on the defendants on the claims against the sheriff in his official capacity because those claims mirror the claims against the County, and are therefore redundant.").  Judge Ludington reached the same conclusion.  *Fox*, 2021 WL 120855, at *8.

---

[13]    First Defendants ECF No. 18-1 at 12 PageID.340; Van Buren Defendants ECF No. 69 at 10-11 PageID.1138-39.

### 6.  Qualified Immunity

Three sets of defendants argue that the Individual Defendants are entitled to qualified immunity.[14]

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  When a plaintiff demonstrates that an individual defendant violated the plaintiff's constitutional rights, the individual defendant is entitled to qualified immunity if the right was not clearly established at the time of the incident.  *See Stockdale v. Helper*, 979 F.3d 498, 506 (6th Cir. 2020).  The plaintiff bears the burden of demonstrating that the right was clearly established at the time of the incident giving rise to the claim.  *Barton v. Martin*, 949 F.3d 938, 350 (6th Cir. 2020). The plaintiff "must show that case law put the issued 'beyond debate.'"  *Stockdale*, 979 F.3d at 506 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

The Court will dismiss the individual capacity claims against the Individual Defendants.  Defendants have established that the Individual Defendants are entitled to qualified immunity.  "The Supreme Court tells us that public officials should generally receive qualified immunity when enforcing properly enacted laws."  *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016).  State statutes generally are afforded a presumption of constitutionality.  *Id.* In *Rafaeli*, the Michigan Supreme Court stated that

---

[14]     First Defendants ECF No. 18-1 at 8-12 PageID.336-40; Van Buren Defendants ECF No. 69 at 9 PageID.1137; Baraga Defendants ECF No. 76 at 18-20 PageID.1247-49.

"the GPTA does not provide for any disbursement of the surplus proceeds to the former property owner, nor does it provide former owners a right to make a claim for those surplus proceeds." *Rafaeli*, 952 N.W.2d at 446. "When public officials implement validly enacted state laws *that no court has invalidated*, their conduct typically satisfies the core inquiry—the 'objective reasonableness of an official's conduct'—that the immunity doctrine was designed to test." *Id.* (emphasis added) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Although the Michigan Supreme Court has since invalidated any interpretation of the GPTA that would precluded a former property owner from making a claim for the surplus following the tax foreclosure sale, at the time of the sale of Plaintiff's property the GPTA enjoyed a presumption of validity. Plaintiff has not demonstrated a clearly established right to the surplus. Judge Ludington reached the same conclusion. *Fox*, 2021 WL 120855, at *7-*8.

## C.  Merits of the Claims

### 1.  *Monell* and the Eleventh Amendment

First Defendants argue that for all of Plaintiff's claims under § 1983 against Defendant Counties, Plaintiff cannot establish any policy or custom that caused his injuries.[15] Defendants contend that the retention of the surplus from the sale occurred because of the GPTA, a state law that county treasurers are obligated to follow. Van Buren Defendants argue that the County Treasurers cannot be held liable for damage claims under the Eleventh Amendment because those defendants are simply enforcing state law.[16] Plaintiff asserts that the GPTA does not require Defendant Counties to act as the foreclosing governmental unit

---

[15]     ECF No. 18-1 at 12-16 PageID.340-44.
[16]     ECF No. 69 at 10 PageID.1138.

and that by volunteering or choosing to act as the foreclosing governmental unit, Defendant Counties can be held liable for the choice.

The Eleventh Amendment bars claims for damages brought against a state, its agencies, and its officials sued in their official capacities. *Cady v. Arenac Cty.*, 574 F.3d 334, 342 (6th Cir. 2009). Whether a county official acts as an agent of the state depends in part on state law and whether the official is enforcing state law or policy. *Id.* Local government units, like counties, are generally not considered part of the state for the purpose of the Eleventh Amendment. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.54 (1978). A claimant can use § 1983 to sue a local government unit, including counties, for violations of federal civil rights. *Monell*, 436 U.S. at 690. The claimant must show that the violation was caused by a municipal policy or custom. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286 (6th Cir. 2020); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

The GPTA provides that the "foreclosure of forfeited property by a county is voluntary and is not an activity or service required of units of local government . . . ." Mich. Comp. Laws § 211.78(6). Under the GPTA, counties may choose to act as the foreclosing governmental unit or counties may choose to have the state act as the foreclosing governmental unit. *Id.* §§ 211.78(3) and 211.78(8); *Rafaeli*, 952 N.W.2d at 443. For those counties that choose to act as the foreclosing governmental unit, the GPTA requires the counties to depositing the proceeds of the property sales in a restricted account. Mich. Comp. Laws § 211.78m(8).

Plaintiff has pled sufficient facts to demonstrate that his injury arises from a municipal policy.  Plaintiff pleads that each Defendant County made a voluntary choice to act as the foreclosing governmental unit.  (Compl. ¶ 35 PageID.287.)  And, as a result of that choice, each Defendant County retains the proceeds of the sale and does not return any money to the tax-delinquent property owner.  (*Id.* ¶ 36 PageID.287.)  Also as a result of that choice, the County Treasurers were not acting as agents of the state when they foreclosed and sold the tax delinquent properties.  Judge Ludington reached the same conclusion in the portion of his opinion addressing the sovereign immunity defense.  *Fox*, 2021 WL 120855, at *6-*7.

### 2. Fifth Amendment Takings Claim via § 1983 (Count 1)

Three sets of defendants argue that Plaintiff cannot establish a Fifth Amendment takings without just compensation claim under § 1983.[17]  Defendants offer multiple reasons.

Defendants argue that Plaintiff lacks any interest in the property.  Defendants assert that when the redemption period expired following the foreclosure proceedings, Plaintiff lost all interests in the property.  Defendants conclude that without any interest in the property, Plaintiff has no claim for just compensation.  The Michigan Supreme Court rejected the premise of Defendants' argument in *Rafaeli*.  Because the claimants in *Rafaeli* had an interest in the surplus after the sale, the Michigan Supreme Court concluded that those claimants had a viable takings claim under the Michigan Constitution.  The same reasoning applies to Plaintiff's federal takings claim.  Judge Ludington reached the same conclusion.  *Fox*, 2021 WL 120855, at *11-12; *Arkona*, 2021 WL 148006, at *7.

---

[17]      First Defendants ECF No. 18-1 at 16-17 PageID.344-45; Van Buren Defendants ECF No. 69 at 12-14 PageID.1140-42; Baraga Defendants ECF No. 76 at 2-8 PageID.1231-37.

Baraga Defendants assert that Plaintiff does not have a takings claim because the foreclosure proceedings fall under a state's power to tax and not a state's power of eminent domain.  The Sixth Circuit addressed this argument in *Freed.*  Plaintiff's claim to the surplus proceeds does not interfere with Michigan's assessment, levy or collection of a tax.  *See Freed*, 976 F.3d at 734.  Defendants collected the taxes due when they sold Plaintiff's property and applied the proceeds to the delinquent property taxes and Plaintiff's claim arises from the Defendants' refusal to refund the excess proceeds of the sale.  *See id.* at 735.  None of the authority cited by Defendants on this point address a takings or just compensation claim to the surplus proceeds from the sale of a tax delinquent property.

### 3.  Direct Fifth Amendment Claim (Count 2)

Three sets of defendants argue that Plaintiff's "arising under" or direct Fifth Amendment claims should be dismissed.[18]  Defendants explain that the "self-executing" nature of a Fifth Amendment claim for just compensation does not give rise to an independent cause of action.  Plaintiff contends that takings claims need not be brought only under § 1983.

The Court will dismiss Plaintiff's claim arising directly under the Fifth Amendment. The Sixth Circuit held that "in cases where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violations." *Thomas v. Shipka*, 818 F.2d 496, 499 (6th Cir. 1987) *vacated and remanded on other grounds* 488 U.S. 1036 (1989); *see Roath v. Lee*, No. 3:17-cv-995, 2019 WL 3066533, at *7

---

[18]      First Defendants ECF No. 18-1 at 13 PageID.341; Ottawa Defendants ECF No. 21 at 6-7 PageID.386-87; Van Buren Defendants ECF No. 69 at 12 PageID.1140.

(M.D. Tenn. July 12, 2019) (collecting Sixth Circuit opinions following the holding in *Thomas* and stating that "[t]his Court finds the Sixth Circuit's broad statement that Section 1983 provides the exclusive remedy for constitutional violations to be applicable here and thus will apply it."); *see also Eggleton v. Town of Clendenin*, No. 2:07-cv-26, 2007 WL 9718532, at \*7 (S.D. W. Va. Sept. 27, 2007) (collecting circuit court authority including *Thomas*).  Judge Ludington reached the same conclusion.  *Fox*, 2021 WL 120855, at \* 13; *Arkona*, 2012 WL 148006, at \*8.

### 4.  Inverse Condemnation (Count 3) and

### Michigan Constitution Article X, Section 2 (Count 4)

Three sets of defendants request the Court dismiss Plaintiff's inverse condemnation claim and the claim brought under Article X, Section 2 of the Michigan Constitution.[19] Defendants assert that the two claims are redundant. Defendants also argue that Plaintiff has not stated a claim for inverse condemnation.

The Court agrees that Counts 3 and 4 do not state different causes of action.  In Michigan, an inverse condemnation claim is the "means of enforcing the constitutional ban on uncompensated takings of property."  *Biff's Grill, Inc. v. Michigan State Highway Comm'n*, 254 N.W.2d 824, 826 (Mich. Ct. App. 1977) (citing Mich. Const. 1963, art. 10, s 2, among others).  Judge Ludington reached the same conclusion.  *Fox*, 2021 WL 120855, at \*13; *Arkona*, 2021 WL 148006, at \*9.  Accordingly, the Court will dismiss Count 4.

---

[19]      First Defendants ECF No. 18-1 22-24 PageID.350-52; Van Buren Defendants ECF No. 69 at 14-15 PageID.1142-43; Baraga Defendants ECF No. 76 at 13-14 PageID.1242-43.

Inverse condemnation claims arise when the government's actions amount to a taking of real property even though the government did not follow the procedures set forth in the Condemnation Procedures Act. *Mays v. Michigan Dep't of Transp. v. Tomkins*, 749 N.W.2d 716, 728 (Mich. 2008); *Dorman v. Twp. of Clinton*, 714 N.W.2d 350, 356 (Mich. Ct. App. 2006) ("Through its power of imminent domain, however, a state may follow the procedures outlined in the Uniform Condemnation Procedures Act and condemn, or 'take,' private property for public use by proving the requisite compensation. A property owner may bring an inverse condemnation action seeking just compensation for a 'de facto taking,' when the state fails to follow those procedures."). "While there is no exact formula to establish a de facto taking, there must be some action by the government specifically directed toward the plaintiff's property that has the effect of limiting the use of the property." *Blue Harvest, Inc. v. Dep't. of Transp.*, 792 N.W.2d 798, 805 (Mich. Ct. App. 2010) (quoting *Dorman v. Clinton Twp.*, 714 N.W.2d 350, 356-57 (Mich. Ct. App. 2006). The plaintiff must prove a causation connection between the government's action and the alleged damages. *Mays v. Governor of Michigan*, —N.W.2d—, 2020 WL 4360845, at *7 (Mich. July 29, 2020).

Plaintiff has pled facts to support a claim for inverse condemnation. Plaintiff has alleged that Ottawa County initiated tax delinquency foreclosure proceedings against his property. Eventually, Ottawa County sold the property and kept the proceeds of the sale. Plaintiff makes claims to the surplus proceeds. Defendants' arguments for dismissing the claims are not persuasive. Plaintiff retained an interest in any surplus following the sale of the property. Defendants have not given Plaintiff any of the surplus. Following *Rafaeli*, those

facts state a takings claim under the Michigan Constitution.  *Rafaeli*, 952 N.W.2d at 465. And, an inverse condemnation claim is the proper vehicle for enforcing the constitutional prohibition on takings without compensation.  Judge Ludington reached the same conclusion.  *Fox*, 2021 WL 120855, at *13; *Arkona*, 2021 WL 148006, at *8.

### 5. Eighth Amendment Excessive Fines (Count V)

Three sets of defendants ask the Court to dismiss Plaintiff's excessive fines claim brought under the Eighth Amendment.[20]  Defendants argue the sale of the property and the failure to turn over any proceeds does not constitute punishment.

The purpose of the Eighth Amendment generally is "to limit the government's power to punish."  *Austin v. United States*, 509 U.S. 602, 609 (1993).  "The Excessive Fines Clause limits the government's power to extract payments, whether in cash or in kind, 'as *punishment* for some offense.'"  *Id.* at 609-10 (citation omitted; emphasis added).  Thus, one relevant inquiry for a claim under the Excessive Fines Clause is "whether it is punishment."  *Id.* at 610.  In *Rafaeli*, the Michigan Supreme Court found that the GPTA "is not punitive in nature.  Its aim is to encourage the timely payment of property taxes and to return tax-delinquent property to their tax-generating status, not necessarily to punish property owners for failing to pay their property taxes."  *Rafaeli*, 924 N.W.2d at 447.

The Court will dismiss Plaintiff's excessive fines claim.  The Court acknowledges that Plaintiff pleads that the retention of the surplus is punitive.  (Compl. ¶ 96 PageID.299.)  The Michigan Supreme Court's interpretation of the GPTA, which is controlling here, does not

---

[20]     First Defendants ECF No. 18-1 at 17-19 PageID.345-47; Van Buren Defendants ECF No. 69 at 16-17 PageID.1144-45; Baraga Defendants ECF No. 76 at 15-17 PageID.1244-46.

support Plaintiff's assertion.  Judge Ludington reached the same conclusion.  *Fox*, 2021 WL 120855, at *13-*14; *Arkona*, 2021 WL 148006, at *9.

### 6. Procedural Due Process (Count 6)

Three sets of defendants ask the Court to dismiss Plaintiff's procedural due process claim.[21]  Generally, Defendants contend that Plaintiff was afforded process during the foreclosure proceedings.  Plaintiff argues that he had no process was afforded to him after the sale of the property.

For a procedural due process claim, Plaintiff must plead facts to show (1) he had a property interest protected by the Due Process Clause, (2) he was deprived of that property interest, and (3) the state did not afford him adequate procedural protections before depriving him of the protected interest.  *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010).

The Court declines to dismiss Plaintiff's procedural due process claim.  Plaintiff has a property interest in the surplus proceeds following the tax delinquency sale of his property. *Rafaeli*, 942 N.W.2d at 459.  Ottawa County has not given Plaintiff any of the proceeds. (Compl. ¶ 25 PageID.285.)  Neither Michigan nor Ottawa County provides any process that would permit them to keep the proceeds or allow Plaintiff to seek a return of the proceeds. (*Id.* ¶ 27 PageID.285.)  The foreclosure proceedings did not provide any process concerning a claim to the surplus.  Plaintiff could not make a claim for the surplus until the sale, which occurred after the foreclosure proceedings ended.  And, any surplus was speculative during

---

[21]     First Defendants ECF No. 18-1 at 19-20 PageID.347-48; Van Buren Defendants ECF No. 69 at 17-19 PageID.1145-47; Baraga Defendants ECF No. 76 at 8-10 PageID.1237-39.

the foreclosure proceedings.  Judge Ludington also denied the defendants' request to dismiss the procedural due process claim in *Fox*.  *Fox*, 2021 WL 120855, at *14-*15.

The opinion discussed by Baraga Defendants, *Nelson v. City of New York*, 352 U.S. 103 (1956) does not require a different outcome.  The facts in *Nelson* are similar.  The City of New York relied on a state tax lien foreclosure statute.  The City foreclosed on its liens to several properties, sold the properties, and retained all the proceeds.  In a reply brief, the appellant asserted that the City's retention of the surplus constituted a violation of procedural due process.  *Id.* at 109.  The Court distinguished the New York statute from other foreclosure statutes that courts had considered.  *Id.* at 109-10.  Notably, the New York courts interpreted the statute to allow a property owner to make a timely claim in the foreclosure proceeding to any surplus following the sale, which the appellant had not done.  *Id.* at 110  No such provision exists in the Michigan statute, which distinguishes this situation from the statute and facts in *Nelson*.

### 7.  Substantive Due Process (Count 7)

Three sets of defendants ask the Court to dismiss Plaintiff's substantive due process claim.[22]

Courts have found that the Due Process Clause includes a prohibition on "certain government actions regardless of the fairness of the procedures used to implement them."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).  Our United States Supreme Court has expressed a reluctance to expand the

---

[22]    First Defendants ECF No. 18-1 at 20-22 PageID.348-50; Van Buren Defendants ECF No. 69 at 19-22 PageID.1147-50; Baraga Defendants ECF No. 76 at 10 PageID.1239.

concept of substantive due process. *Id.* at 842 (quoting *Collins v. Harker Heights*, 403 U.S. 115, 125 (1992)).  Thus, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)); *see Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016).

The Court will dismiss Plaintiff's substantive due process claim.  Plaintiff pleads that the defendants' conduct of "destroying and/or seizing" his equity is arbitrary and shocks the conscience.  (Compl. ¶ 110 PageID.300.)  Plaintiff's claim fits squarely within the concerns expressed by the Supreme Court about expanding the scope of the Due Process Clause. Our Constitution includes an explicit provision for takings without just compensation. Plaintiff cannot meaningfully distinguish this substantive due process claim from his takings claim. *See Kanuszewski v. Michigan Dept. of Health and Human Servs.*, 927 F.3d 396,414 n.9 (6th Cir. 2019) ("Because the substantive due process rights that Plaintiff asserts are analytically distinct from their Fourth Amendment claims, we may address both types of claims separately.").  Thus, Plaintiff must bring his claim under the Fifth Amendment, not under the Due Process Clause.  Judge Ludington reached the same conclusion. *Fox*, 2021 WL 120855, at *15.

### 8.  Unjust Enrichment (Count 8)

Three sets of defendants ask the Court to dismiss Plaintiff's claim for unjust enrichment.[23]

For an unjust enrichment claim, a plaintiff must plead facts to show (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting from the retention of the benefit by the defendant. *Karaus v. Bank of New York Mellon*, 831 N.W.2d 897, 905 (Mich. Ct. App. 2012).  In *Rafaeli*, the Michigan Supreme Court discussed *Dean v. Department of Natural Resources*, 247 N.W.2d 876 (Mich. 1976), which it described as a recognition of a "property owner's right to collect the surplus proceeds from the tax-foreclosure sale of his or her property . . . under the common-law claim of unjust enrichment." *Rafaeli*, 952 N.W.2d at 457.

The Court declines to dismiss Plaintiff's claim for unjust enrichment.  This Court is bound to follow *Rafaeli* and *Dean*, which sanction a property owner's interest in the surplus proceeds following a tax-foreclosure sale through a claim for unjust enrichment.  Defendants' argument that Plaintiff lost all rights and interests to the property through the foreclosure proceedings was rejected by *Rafaeli*.  Judge Ludington reached the same conclusion.  *Fox*, 2021 WL

Defendants' argument that Plaintiff comes with unclean hands does not require a different conclusion.  Defendants contend that Plaintiff does not have clean hands because he failed to pay his property taxes.  "It is well settled that one who seeks equitable relief must do so with clean hands." *Attorney Gen. v. PowerPick Club*, 783 N.W.2d 515, 536 (Mich.

---

[23]     First Defendants ECF No. 18-1 at 24-25 PageID.352-53; Van Buren Defendants ECF No. 69 at 22-25 PageID.1150-53; Baraga Defendants ECF No. 76 at 14-15 PageID.1243-44.

Ct. App. 2010).  "Unjust enrichment is an equitable claim."  *AFT Michigan v. Michigan*, 846 N.W.2d 583, 599 (Mich. Ct. App. 2014).  But, the doctrine applies to the "controversy at issue" and does not require a claimants to "have led blameless lives."  *Precision Instruments Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814-15 (1945).  The doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith *relative to the matter in which he seeks relief*[.]"  *Id.* (emphasis added).  The dispute here arises from the surplus following the tax foreclosure sale; the dispute or controversy does not arise from the tax foreclosure process.  The doctrine of unclean hands may have precluded Plaintiff from raising equitable claims during the foreclosure proceedings.  Plaintiff's failure to pay property taxes, however, does not preclude him from making an equitable claim to the surplus after the foreclosure sale.

### D.  Conclusion

The Court will grant the motions to dismiss in part and will deny the motions to dismiss in part.  The Individual Defendants will be dismissed.  For the claims against the Individual Defendants in the individual capacities, they are entitled to qualified immunity.  The claims against the Individual Defendants in their official capacities are redundant with the claims against Defendant Counties.  The Court will dismiss Counts 2, 5, 6, and 7, which are Plaintiff's federal claims other than his Fifth Amendment takings without just compensation claim brought under § 1983.[24]  The Court will also dismiss Count 4, Plaintiff's

---

[24]     As part of the tolling issue, Defendants argued that Plaintiff could only bring the claim or claims that would be part of the *Wayside Church* class action.  Defendants relied Justice Powell's concurrence in *Crown. See Crown*, 462 U.S. at 354 (Powell, J. concurring).  Because the Court concludes that Plaintiff cannot maintain those claims for other reasons, the Court need not

state-law takings claim.  The Court will deny the motions to dismiss as to the County

Defendants for Counts 1 (federal takings claim), 3 (state law inverse condemnation claim),

and 8 (state law unjust enrichment claim).

IV.

Having concluded that some of Plaintiff's claims survive the motions to dismiss, the

Court now considers Plaintiff's motion for class certification.  (ECF No. 101.)  Plaintiff

requests the Court certify a class under Rule 23(a) and 23(b)(3).  Defendants filed three briefs

in response.[25]  Plaintiff filed a reply to each brief in opposition.  (ECF Nos. 111, 120, and

122.)

Rule 23 of the Federal Rules of Civil Procedure governs class actions and class

certifications.  The party seeking class certification bears the burden of establishing the four

prerequisites to a class action: (1) the class is so numerous that joinder of all members is

impracticable, (2) there are questions of law or fact common to the class, (3) the claims and

defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 560 (6th Cir. 2007).  District courts must conduct

a "rigorous analysis" before certifying a class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,

351 (2011). "Rule 23 does not set forth a mere pleading standard," and courts "probe behind

---

resolve whether Plaintiff's federal claims must be limited to those that would be part of the
*Wayside Church* class action.

[25]     First Defendants filed one brief in opposition.  (ECF No. 107).  Defendants Baraga County,
Ann Koski, Ontonagon County, and Jeanne Pollard filed a second brief in opposition.  (ECF 109.)
Defendants Kent County, Peter MacGregor, Ottawa County, Amanda Price, Bradley Slagh, Van
Buren County, Karen Makay, and Trisha Nesbitt filed the third brief in opposition.  (ECF No. 113.)

the pleadings before coming to rest on the certification question[.]" *Id.*  Where there are disputed facts, "*Dukes* verified that the district court should not merely presume that the plaintiff's allegations in the complaint are true for the purpose of class motion without resolving factual and legal issues." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012).

The Court will deny Plaintiff's motion for class certification, but not for any of the Rule 23 requirements.  As part of the motions to dismiss, Defendants raised concerns about the statute of limitations.  The parties then discussed the holding in *American Pipe* and *Crown,* which involved tolling issues for claims that fall under motions for class certification. This Court concluded that Plaintiff's federal claims were subject to a three-year statute of limitations and that at least the Fifth Amendment takings claim had been tolled by a class action lawsuit which would include Plaintiff's claim.

The parties have overlooked a third case in the *American Pipe* progeny, which affects this pending motion for class certification.  In *China Agritech, Incorporated v. Resh*, 138 S. Ct. 1800 (2018), our Supreme Court considered whether a putative class member, rather than joining in an existing lawsuit or filing an individual action, may "commence a class action anew beyond the time allowed by the applicable statute of limitations?" *Id.* at 1804.  The lawsuit that was the subject of the opinion was the third, nearly identical, class action lawsuit filed over the same set of facts.  The claims involved had a two-year statute of limitations. The first lawsuit was filed in February 2011, and the district court denied the motion for class certification in May 2012.  A different plaintiff then filed a second class action lawsuit in October 2012, still within the two-year statute of limitations.  The district court again denied

the motion for class certification, but on different grounds.  Resh then filed his class action lawsuit in June 2014, more than a year after the statute of limitations expired.  The district court denied the motion for class certification as untimely and the Ninth Circuit, applying *American Pipe*, reversed.  The Supreme Court granted certiorari to resolve a circuit split, which included the Sixth Circuit's opinions in *Phipps v. Wal-Mart Stores, Inc.*, 792 F.3d 637, 652-53 (6th Cir. 2015).

Based on the holding in *China Agritech*, the Court concludes it must deny Plaintiff's motion for class certification.  In a near unanimous opinion (Justice Sotomayor concurred in the judgment only) the Court held that

> *American Pipe* does not permit a plaintiff who waits out the statute of limitations to piggyback on an earlier, timely filed class action.  The 'efficiency and economy of litigation' that support tolling of individual claims, do not support untimely successive class actions; any additional *class* filing should be made early on, soon after the commencement of the first action seeking class certification.

*Id.* at 1806 (italics in original; internal citation omitted).  The Court offered two reasons for the holding.  First, to benefit from equitable tolling, a party must have been diligent in pursuit of its claims.  *Id.* at 1808.  "A would-be class representative who commences suit after expiration of the limitations period, however, can hardly qualify as diligent in asserting claims and pursuing relief."  *Id.*   Second, allowing class actions lawsuits, in contrast to lawsuits asserting individual claims, would create a situation where the statute of limitation is repeatedly tolled.  *Id.* at 1808.  "The time to file individual actions once a class action ends is finite, extended only by the time the class suit was pending; the time for filing successive class suits, if tolling were allowed, could be limitless."  *Id.* at 1809.

Plaintiff can maintain this lawsuit for his individual claims, but he cannot seek to represent a class.  Plaintiff's claims accrued in 2013.  Following *Crown*, Plaintiff can maintain this lawsuit for his individual federal claims.  Following *China Agritech*, this Court must deny Plaintiff's request for class certification.

## ORDER

1.  The Court **GRANTS IN PART and DENIES IN PART** Defendants' motion to dismiss.  (ECF Nos. 18, 20, 68 and 75.)  Defendants' motions are granted for all of Plaintiff's claims against the Individual Defendants as well as Counts 2, 4, 5, 6 and 7.  Those defendants and claims are dismissed.  Defendants' motions are denied for Counts 1, 3, and 8.

2.  The Court **DENIES** Plaintiff's motion for class certification.  (ECF No. 101.)

**IT IS SO ORDERED.**

Date:   March 2, 2021                                            /s/ Paul L. Maloney
                                                                        Paul L. Maloney
                                                                        United States District Judge